### OTIS GOFF *vs.* INHABITANTS OF REHOBOTH.

Proprietors of common and undivided land voted to convey to a parish a parcel thereof, on which a meeting-house had been erected, "reserving to the inhabitants of the town the privilege of occasionally holding town meetings in said meeting-house," and authorized a committee to execute a deed: The committee executed a deed, which recited the vote, but made no reservation in the granting part thereof. *Held*, that the deed conveyed the land, subject to the reservation in the vote. *Held also*, that a person, who bought the meeting-house of the society, had notice of the reservation, by the record of the deed, and took the house subject to the right of the town to hold meetings therein, whilst it should stand on the land conveyed by the proprietors.

A town held its meetings in a parish meeting-house, nearly fifty years, free of charge, and the parish afterwards sold the house to G. *Held*, that G. could not dispute the right of the town to hold meetings in the house, whilst it remained where it was erected. *Held also*, that a grant, by the parish to the town, of a right to hold meetings therein, might be presumed from the long occupation of the house for that purpose.

Selectmen have no authority, by virtue of their office merely, to make a contract, in behalf of a town, for the hiring of a building for the purpose of holding town meetings in it.

ASSUMPSIT to recover forty dollars for the use of a house for town meetings, held therein at various times. At the trial in the court of common pleas, before *Colby*, J. the defendants contended that they had a right so to use the house, without paying for such use.

The evidence showed that the plaintiff, in 1841, purchased a meeting-house (the house in question) of the Catholic Congregational Society in Rehoboth, exclusive of the land on which it stood; and that the house remained on the land, where it had always stood, until after the date of the plaintiff's last charge against the defendants for the use of it, and that it was afterwards removed by the plaintiff, and converted into a barn: That, after the sale of said house to the plaintiff at public auction, two of the selectmen of Rehoboth (the third being absent from town) hired it of the plaintiff, to hold the first town meeting charged in his writ, for the sum of four dollars; though no authority was shown to have been given to the selectmen to hire said house, or any house: That the keys of said house were subsequently procured of the plaintiff by the selectmen — they then claiming a right, which the plaintiff denied; and that the defendants used the house, for town meetings, the number of times alleged in the plaintiff's writ.

It appeared that the proprietors of common and undivided lands in the town of Rehoboth, on the 26th of February 1793, voted to convey to the Catholic Congregational Church and Society in the second precinct in said town, (incorporated by *St.* 1792, *c.* 14. 1 Special Laws, 367,) the land on which the meeting-house in question stood, "reserving to the inhabitants of said town the privilege of occasionally holding town meetings in said meeting-house," &c.; and that a deed of said land was made to said society, on the 20th of March 1793, by an authorized committee of said proprietors, in which said vote was recited, but in the granting part of which no reservation was made. This deed was duly acknowledged and was recorded on the 4th of April 1793.

It also appeared that the town of Rehoboth, in 1774, voted that the aforesaid society (then called the second precinct in Rehoboth) should have liberty to pull down the old meeting-house, near Palmer's River, (towards the erection of which the town had paid £50,) in consideration that the town should have the privilege of holding town meetings in the

new house then to be erected; which was the house in question: That the town had uniformly held their meetings in said house, since 1803, free of charge: That before the town of Rehoboth was divided by *St.* 1811, *c.* 138, passed on the 26th of February 1812, and after said meeting-house was built, the town meetings were held alternately in said house and in the meeting-house of the first precinct, (afterwards the town of Seekonk,) and that after the division of the town, the meetings were held in the house in question, free of charge.

The plaintiff also put into the case certain votes of the town, passed in 1841 and 1842, directing the building of a town house.

Upon the foregoing facts and evidence, the judge instructed the jury as follows : " 1st. That the town of Rehoboth had not the right to hold their meetings in said house, against the will of the proprietors.    2d. That if they had, still the right was subject to the paramount right of the proprietors to sell and take it down, and rebuild ; and that by the sale, proved in this case, the right terminated, and the plaintiff held the house relieved from the servitude."    A verdict was thereupon returned for the plaintiff, and the defendants alleged exceptions.

*N. Morton,* for the defendants.    The town had a right, by grant, to hold meetings in the house, free of charge.    The deed of March 1793 reserved that privilege to the town ; and meetings were held in it from 1812, without charge, until the plaintiff bought it.    The old meeting-house was torn down on condition that the town should have a right to meet in the new house.

The town could not be deprived of their right by any agreement of the selectmen, who had no authority; nor could the town be bound by the selectmen's promise, which was without consideration.    *Norton* v. *Mansfield,* 16 Mass. 48. Besides ; a promise to pay was made only in one instance, and the town afterwards occupied the house under circumstances which show a claim of right.

The plaintiff, as grantee of the house, took it subject to the same conditions, &c. that attached to it in the hands of the original proprietors.

*Eliot*, for the plaintiff. It was not intended by the grant to the Catholic Society, that the town should have any control of the house, contrary to the will of the society that owned it. In former times, the parish and the town were, in effect, the same body, and parish and town business was done at the same meeting. *Inhabitants of Milford* v. *Godfrey*, 1 Pick. 91. *First Parish in Medford* v. *Pratt*, 4 Pick. 222. The defendants have had all the privileges they were entitled to; and the plaintiff took the house exonerated, if ever it was under servitude.

The reservation in the proprietors' vote does not say that the town should hold meetings in the house without paying therefor; and the deed does not contain any reservation.

The society had a right to pull down or sell the house at their pleasure, and thus terminate the rights, if any, of the town. And so the defendants understood the matter; as is shown by the agreement of the selectmen to hire the house of the plaintiff. *Daniel* v. *Wood*, 1 Pick. 102. *Gay* v. *Baker*, 17 Mass. 435. *Wentworth* v. *First Parish in Can ton*, 3 Pick. 344. *Howard* v. *First Parish in North Bridgewater*, 7 Pick. 138.

*Coffin* replied.

WILDE, J. This was an action of assumpsit for the use and occupation of a house by the defendants for town meetings. Upon the facts reported, the jury were instructed, for the purposes of the trial, that the defendants had no right to hold their meetings in the said house against the will of the proprietors; or, if they ever had such a right, it was terminated by the sale to the plaintiff. To these instructions the defendants except; and the main question is, whether the defendants had a right to hold their meetings in the house purchased by the plaintiff, without his consent, or payment therefor.

The plaintiff purchased the house in 1841, from the Congregational Society in Rehoboth, and their title was derived from the proprietors of the common and undivided lands in that town. In their deed to the society, it appears that by the vote of the proprietors, authorizing the said conveyance

to the society, a reservation was made in favor of the defendants, granting them the privilege of holding town meetings in the said meeting-house, and that the committee, appointed to make the deed, were directed to make it with said reservation. It has been argued for the plaintiff that this vote is recited in the preamble of the conveyance, and that no such reservation is contained in the granting part of the deed. But this argument cannot avail the plaintiff, for if the grant was not made in pursuance of the vote, the conveyance was made without authority, and was void. And the grantees, in that case, would hold under the vote of the proprietors, subject to the reservation. But there can be no doubt that the conveyance was intended to be made in pursuance of the vote, and may be so construed.

This privilege had been enjoyed for nearly fifty years before the sale of the house to the plaintiffs; and after such a long and undisturbed enjoyment, the society could not be allowed to dispute the defendants' right. So it was decided in *Goddard v. Dakin,* 10 Met. 94. And as the plaintiff had notice of this reservation, by the record of the deed to the society, he, we think, would be equally bound by the estoppel. If, however, there were any doubt on this point, we think a grant may be presumed from the Congregational Society.

To this ground of defence it is objected, that the defendants are estopped to deny the plaintiff's title, by the agreement made with the plaintiff by two of the selectmen of the town, as stated in the report of the case. If the selectmen had been authorized by the defendants to make the agreement, this might be considered a valid objection. But there was no evidence of any such authority, and the selectmen were not authorized, by virtue of their office, to make the agreement in behalf of the town. This agreement was inadvertently made, probably under a mistake of the defendants' rights. Subsequently, when the keys of the house were delivered to the selectmen by the plaintiff, they asserted the right of occupation by the town; and although this right was denied by the plaintiff, he suffered them to take away the

keys. Whether this might be considered as an implied consent, on his part, that the liability of the town to pay for the occupation of the house was to depend on the validity or invalidity of their title, it is not necessary to decide, as the selectmen had no authority to bind the town. 16 Mass. 48.

It has been contended by the plaintiff's counsel, that by the votes of the town to build a new town house, they have impliedly abandoned their right in the plaintiff's house. But these votes, we think, do not justify any such implication. The votes were prospective, and were passed in contemplation of the necessity of providing a new place for town meetings when the old meeting-house should be removed.

*New trial granted*